This is Justin Stolpes on the behalf of Scott Ayotte, who is the appellant and was the plaintiff in the underlying cases. We're requesting that this court use its broad discretionary power and vacate the decision granting summary judgment to American Economy Insurance. What would be the effect of vacater? Why do you care? The reason that we care, Your Honor, is Ayotte has filed a bad faith action, which only accrued after the insureds in the underlying state court litigation. Well, this is my real problem here. Yes, that's true about the statute, but it's not true of the common law bad faith. And you did, in fact, have a common law bad faith claim in your earlier case. We did, Your Honor. And you didn't deal with that at the point that you were claiming mootness. You just kind of forgot about it. Well, that is the thrust of the response brief by American Economy Insurance, is that there is overlap in the common law bad faith claim that we brought for failure to pay Ridley and the bad faith claim that has been brought in front of Judge Malloy. However, that argument is not an appropriate ground for vacater. This is not a reconsideration of whether the Ninth Circuit was correct when it did declare that our appeal was moot. Okay. We have no ability to But, I mean, it seems to me there was an earlier, sort of an earlier problem, which is you didn't exactly really appeal that. As I understand it, that claim went to the, it was determined, and you said this in your ply brief, to be limited to the Ridley claim. Yes, Your Honor. Bad faith with regard to the Ridley claim. That's so. Correct. But it was not, in fact, appealed separately, as I understand it. Even appealed. So the problem is that you kind of left it standing where it was in the district And it really would moot out because it hadn't been properly appealed, because it would be for damages above, against the insurance company, above whatever the settlement was, right? No, Your Honor. The claim we believe to be moot because when American economy was forced to pay the policy limits by its insurance decision to confess judgment, there is a payment of the policy limits. There's nothing more there. It was our, we believe. But a bad faith claim is by definition a budget policy limit. Correct, Your Honor. I see what you're getting at, which is that there was a common law bad faith claim for failure to pay the Ridley benefits. So why isn't that still going? I believe that's your question. Why isn't that still going? Because you didn't appeal it, as I understand it, not really because it was mooted out. No, not necessarily, Your Honor. We did appeal that decision. However, it was declared moot by the Ninth Circuit. We have no ability. Help me on something here that I'm missing here. I'm trying to figure out just what is the basis for the bad faith claim, other than the initial failure to pay the Ridley interim expenses during the litigation. Basically, they didn't pay because I guess they thought it was the plumber's fault to install the sign, maybe, instead of the property owner's fault for not maintaining the sign or something like that. Anyway, they didn't pay. You sued. They settled. And then the Ridley damages were paid. And subsequently, there was a policy limit settlement, as I recall. So I'm trying to figure out what do you have left as a basis for a bad faith claim, other than the delay in paying the Ridley amounts. So prior to judgment in the underlying case, you can bring a Ridley case. Yes, I know that. But after judgment was entered, then you have the ability to bring what's called a statutory bad faith action. And the basis for that was twofold. First, it is per se bad faith in Montana to condition the payment of insurance proceeds on a release. When you say proceeds, do you mean the policy limit or do you mean the Ridley? Any portion of the policy. It is bad faith in Montana to condition. But as I recall, originally they did condition it, and then they didn't. No, they conditioned. I don't think we actually have the settlement agreement in the record. There is no settlement agreement. And there has never been a settlement agreement. It is a judgment entered by the district court in Helena, Montana. Stipulated judgment? It was a confessed judgment. So they confessed judgment. But you called it a settlement in your papers to the 9th Circuit on the Muniz issue. Granted, Your Honor. I do regret the language. Oh, is this one of those confessions of judgment covenants not to execute an assignment of rights? Correct. But we don't have the agreement. It's actually all in public record. It's all in the judgment? Oh, yes. Yeah, it's all in front of Judge Seeley, so you could get that today. Getting back to your point. But back to the prior appeal. As I read the order, it was your motion to dismiss the appeal as moot. Correct, Your Honor. And we believe that that was correct. We believe that by payment of the policy limits, the Ridley action had been mooted, and the 9th Circuit agreed with us. Getting back to the first question that you asked me, well, there does appear to be some ---- I agree with all of that, but I get stuck on this question about the common law. We would love to be able to appeal that, and we did appeal that. However, we alerted the 9th Circuit to the fact that ---- And it wasn't clear to me that you appealed it. It was awfully submerged in your briefs to the 9th Circuit. Well, the decision that we appealed was that Judge Siebel had declared that liability of the insureds was not reasonably clear, or at least he determined that there are questions of fact, therefore summary judgment is appropriate. We appealed that determination because the Ridley action, along with the common law of bad faith action, all depend on that decision of whether or not liability is reasonably clear. So we appealed the entirety of the judgment. So there wasn't a separate judgment on the common law of bad faith action versus the Ridley action. Now, whether we are able to bring the common law back ---- So your ultimate answer to my question is, well, maybe it wasn't moot, but the court said it was, and that's sort of by the boards. And we're stuck. We can't review it, and we wish that we could. We wish that we could go back, and if the court wants to unmoot that, that's fine, too. We would love the ability to be able to challenge Judge Siebel's opinion that liability is not reasonably clear because there are two major errors in that order that we believe ---- That's the problem. Yeah. And that is a problem. Well, it may be a problem for us in the bad faith action. You're right. Well, that's what we're talking about. It was a problem for you on mootness, too. Basically, you said they didn't pay us money. They should have paid us, and then they paid the money. Well, it's a ---- sorry. It's a problem for us in the bad faith action in front of Judge Malloy, but it should not be a problem for your decision. Let me say I go with you on several steps. Okay. Let me say, for purposes of discussion, I go with you on the only thing that was mooted out and was payment of the Ridley damages, not bad faith. And let's say I go with you on after the initial remand, the district judge applied the wrong standard to evaluating whether to grant vacator as an equitable matter. The next step confuses me. Suppose we tell them to do it again. What damages do you have left? I'm trying to figure out. It looks like you got your Ridley damages. They tried to condition payment of the policy limits on your giving them a hold harmless from the state. You didn't give it to them, and you got the money anyway, if I understand the record correctly. So what's left? What's left in our bad faith action in front of Judge Malloy. I mean, if people say, I won't give you the money unless you do something that you really don't have to do, and then you say, no, I won't do it, and then they give you the money anyway, what's left to sue them for? Statutory bad faith damages. What is the bad faith there? The order that we had on the conditioned and then they didn't is actually the opposite. They offered up the policy limits, and then they conditioned payment of those policy limits. As I understand it, the bad faith, I mean, I think this is right, the bad faith damages would be damages for not having gotten the money when you needed the money. Essentially, whatever out of pocket or you lost your house or something happened because you didn't have the money when you were supposed to have the money as opposed to now, later. I mean, is that it, basically? Well, that's a lot, yeah. I mean, that's what bad faith damages usually are. You didn't give them to me when you should have given them to me, and that caused all kinds of problems. Sure. On conditioning the payment, as I understand it, first they said we'll settle for policy limits, and then when it came time to consummate the settlement, they said, but only on condition you give us a hold harmless from the state. Correct. You did not give them a hold harmless from the state. Absolutely not. And they gave you the money anyway. Four years later. And so it's whatever the consequences of the four years later was. Yes. Yeah, that would be our bad faith action. That was $100,000 worth of litigation expenses. That was Scott Ayotte not being able to afford a prosthetic eye. At his deposition, they were crossing him and saying, well, you've alleged that you need a prosthetic eye, but your eye hasn't collapsed. So it's bad faith is delay getting his prosthetic eye and a four-year delay in getting damages that, in your view, were obviously owed. Absolutely. Was there any interest paid? No. No, there was not. And there was, like I said, about $100,000 worth of litigation expenses that were incurred there and some medical damages that cannot be undone. As I was getting at, his eye socket did collapse, and he did have a lot of problems with that. I'd like to reserve the remainder of my time if there's no questions. You may do so, counsel. Thank you. We'll hear from the other side. Good morning. May it please the Court. My name is Paul Tranel, and I represent the defendant, Annapelli American Economy Insurance Company. I want to begin addressing, I think, better and more specifically, some of the questions that you've articulated or asked this morning. Let me begin with. Could you? I'll appreciate your doing that, but I've got an initial question that's on my mind. Yes. It looked to me like when he got the case back, the district judge used Bonner-Mall to determine what his standard should be for deciding whether to grant vacatur. But it looks like Bonner-Mall is the test that the appellate court is supposed to use, and what the district judge should have used is the American game standard. Is that right? That is correct. Based on the record that you have, the district court did use the – it appears that he used the Bonner-Mall standard from the U.S. Bank Corp. v. Bonner-Mall case. The reason – And should he have used the American game standard? No, I don't believe that he should have. The reason that I say that and answer the question in the negative, Judge, is because when you look back at the Ninth Circuit's remand order – I look at it, and I don't read it the way you do. I don't understand. It cites – it says you should consider something. Sure. And it took two cases, one of which says that you can remand for the construction to consider the vacatur request, and the other one applies a balancing test. So why is that ordering him to apply the exceptional circumstances, Judge? I think because when you read the – Vote that language. The remand order, Judge, when you look specifically at the cites to the U.S. Bank Corp. decision there, it cites it for the specific proposition that holding that by mootness by reason of settlement does not justify vacatur of a judgment under review. By the court – by the appellate court. Correct. Under review. Okay. And it didn't. And then – but the court of appeals may remand the case with instructions that the district court consider the vacatur request. Right. And you – Why is that an order about on what standard he is supposed to consider it? Because it specifically cites to the U.S. Bank Corp. decision which specifically addressed the issue of when mootness is a result of the appellant settling a case. I know. I know. Wait a minute. Our citation explains why we do something. Sure. It doesn't tell the district judge what he's supposed to do unless we say it does. I mean, we're explaining why we remanded. Right. By citing those cases. Sure. But even to the extent that there is any argument that, well – So what do you make out of the C also, Allen v. DeLorean? That that part of the decision is simply informing the district court that it does have the authority to go back and look at the issue and make the determination of vacatur based under the U.S. Bank Corp. standard. But wasn't Allen v. DeLorean a balancing equity analysis? Right. So what – I just don't see it in this order. It's obviously – Sure. So even if we get beyond the issue, though, of whether or not the district court as a matter of the law of the case, which I think is really where your question would come from, is this the law of the case or not? Because that's what you're asserting. Sure. And it certainly is a significant and important part of our argument, because we think that it is. But even beyond that, when you get to the issue of did the district court abuse its discretion in – Well, the district court – one has no clue what the district court did from reading what the district court said. The district court has a very, very broad discretion in reaching the – And that's where the holding in the American Games case becomes important from the Ninth Circuit, where the court in the American Games case indicated that the district court, when reviewing and making a determination about vacating its own judgment, has great equitable discretion. Right. But if the district court applies the wrong standard, that's treated by us as an abuse of discretion. If they applied the wrong standard, you could conclude – It seems to me the district court didn't even understand, as far as this order is concerned, that what was settled, that this case was not the underlying case. It was – and it wasn't a case about the insurance proceeds in general. It was a case about proceeds over a time period, and it was not, therefore, the case that was settled. They didn't even get that. But regardless of whether or not the district court applied the correct standard under the U.S. Bank Court decision or should have applied the equitable balancing standard, the fact of the matter is that the district court's decision still remains correct when you look at the facts of this case because it did, in fact, consider equity. It specifically says in the district court's order denying the motion to vacate He says that the mootness of the complaints of appeals is a direct consequence of willingly settled the insurance. That is not so, because the case that was settled, the case that was – this case is a case about interim fees. It is interim payments, and it is going to be over. It would have been over if they took the money that was proffered or would have been over after the trial, but it was going to be over. But it's not the same issue. But the – when they – when Mr. Ayotte settled his State court lawsuit and took the $500,000 that American economy paid – He didn't get the same thing that this case was about because he didn't get the money over the time period. He didn't. He settled, though he mooted the issue of the Ridley payments. And the argument that, well, the company should have made those Ridley payments sooner is specifically the issue that was being addressed when the appeal became mooted. Because what the plaintiff did in this – what Mr. Ayotte did in this lawsuit, there's a number of cases going on here. We have the State district court case in which he sued the State of Montana, and he sued John and Karmus Cinerius doing business as the River of Gold for the allegations that their sign fell. Let me just tell you where I am on this. Sure. But for this question about the common law bad faith claim, it seems to me everything you've said is wrong. So the question is, what about the common law bad faith claim? Because everything else is about an interim matter that was over because it was over because it was a lawsuit that was going to be over. So it's essentially a kind of happenstance. The fact that it was over because he agreed to take a stipulated settlement or it was going to be over two weeks later because the trial was going to be over is kind of, no, never mind. The fact is it was a time-limited problem, and it was over because the time was over. So that seems to me all spinach. The question is, what about the common law bad faith claim? The common law bad faith claim, he did not carve that out in any way, shape or form when they notified the Ninth Circuit in June of 2011. Why would he have to? In a settlement agreement, commonly you carve things out, and the first thing I looked for was a settlement agreement because they usually are explicit. Here there's no settlement agreement. Here's how it looks to me, and educate me on what I'm missing. It looks to me like the plaintiff here or the injured person. The plaintiff is too confusing in this case. The injured person is making two claims. One, he's saying, my eye got permanently messed up because the insurance company unreasonably and in bad faith delayed the Ridley payments. Now that claim may be dead because of the magistrate judge saying liability wasn't reasonably clear and the case being mooted out and not through happenstance. However, the injured person has another claim. He's saying, instead of just paying me the policy limits, which you obviously owed me and any good faith insurance company would have paid right off the bat, you conditioned them on a hold harmless agreement from the state and jerked me around for four years of litigation before you paid them. That's an entirely different bad faith claim. I don't see why it's mooted out, so explain it to me. Yeah, and the carve out didn't need to occur in terms of whatever settlement Mr. Ayotte reached. I don't see why you need a carve out. I mean, if you and I have two separate car accidents and we settle one of them, we don't need any express agreement to not settle the other one. But factually, the case that he, what he settled in May of 2011, was his lawsuit against John and Karma Cinerius and the State of Montana, the two people he, the two parties that he initially filed the lawsuit against. But not the condition that you should have been paying me, that insurance company should have been paying you much sooner. That, to the extent there was the Ridley, the demand for Ridley payments. Not just Ridley, it's also a bad faith issue, i.e., you should have been paying me much sooner. The delay damages go to the half million, not just the Ridley payments. The delay damages would go. I understand what the. That's the allegation that he's making. You're correct about that. My point is not that there needed to be a carve out in a settlement agreement. My point is that if Mr. Ayotte believed that his common law bad faith claim survived the settlement that he reached with the State of Montana and American Economies Insurance in May of 2011, he needed to tell the Ninth Circuit that when he filed this motion to vacate the appeal. Boy, I don't even. The reason. Had that claim even accrued then? I mean, had the four years of alleged jerking around already passed by the time he settled the Ridley claim? The common law bad faith claim had already been filed and was part of the allegations that he was making in the federal court suit. But only, and I think this is what Judge Plante was saying, it was quite clear in the magistrate judge's order that it was only going ahead with regard to the failure to pay the Ridley payments. Correct. And not with regard to failing to pay. Now, Ridley payments are incremental, is that right? Well, they're based on, there are a couple of issues with respect to Ridley obligations. You have an obligation to pay the medical expense as it's incurred if liability is reasonably clear and medical causation is reasonably clear. But you don't have an obligation to pay the whole policy amount up front. Not under Ridley. So there are. So the common law benefits, the common law duty of fair, bad faith claim that he was litigating, was allowed to litigate, is not the same one he's trying to litigate now. Well, there are, he actually continues to maintain some of the same allegations in the present case that has stayed in front of Judge Malloy in the federal district in Montana. That bad faith lawsuit has been stayed. There are similar allegations, or at least the statutory obligations are very similar to the common law allegations that he was making earlier as part of the Ridley action. The point that I think that's critical isn't that a carve out occurs with respect to a settlement agreement. It's that Mr. Ayotte didn't tell the Ninth Circuit when he moved to dismiss his appeal as being moved that he had this common law bad faith claim that he wanted appealed. Why should he? Yeah, it was just for the interim medical payments. So why should he tell us he has another claim? Because he had a bad faith claim, a common law bad faith claim that he argued was based upon the company's failure to make those Ridley payments sooner, at the date that he demanded them. So wouldn't this all lead to, isn't the worst possible conclusion that this could lead to, is that the vacature should be for the Ridley payments, but not for the common law bad faith claims based on the Ridley payments? You could reach that conclusion, but Mr. Ayotte never asked the Ninth Circuit. I'm not asking the Ninth Circuit. You're now in the district court. They told you to go to the district court and ask the district court for vacature, right? Your claim is that the common law bad faith claim shouldn't be subject to vacature because it is more clear. I mean, what you're really saying is because it really wasn't moved. And so maybe that's the reason. But there's no reason why you wouldn't at least, what would be the justification for not having vacature for the Ridley issues directly? Well, the reason that vacature doesn't apply to the Ridley issues directly is because Mr. Ayotte settled those claims. The issue given lies to the Ridley. But he absolutely didn't. That's why I don't understand your argument. What is your argument that he did? He did because he knew his attorneys were well aware that under Montana law, when he reached a settlement with the tortfeasors and the underlying state court action, when he settled with the State of Montana and with John and Karma Cinerius' American Economies Insurance, that he was mooting any demand that he had for Ridley payments. Of course, because he was now getting the money. He knew that single issue was settled. And if he didn't settle it, it still would have been mooted. It would have been mooted by a trial that was a month away. Right. He could have tried the case, and the outcome may have been, ended up being the same because if the case had been tried to a verdict, the Cinerius' contrary to what has been represented, were contesting liability in the underlying case. That's why the release was not automatically given. That's why there was an issue about whether they were going to pay. They disputed that. In addition. But either way, either way, this was a time. The whole point about the Ridley payments is that they are time bound. They're going to be over when the case is over, whenever that is, and however it is. Right. But that's not happenstance because you have the ability, if you're going to file a separate declaratory judgment action to demand Ridley payments, and then you have voluntarily settle your case, you have voluntarily mooted the issue. That's the critical point. Mr. Ayotte voluntarily mooted the issue. In addition, American economy, contrary to what he said in the briefing, was a party to the state court action that was pending. He voluntarily mooted the issue, but in a different litigation. Correct. And you're saying that, notwithstanding it's in a different lawsuit, still meets the Bonner-Mall test. Yes. All right. Thank you, Counsel. All right. Your time has expired, Counsel. Yes, thank you. Could I ask before you leave, would you mind pushing that back toward the center? Thank you very much. That's great. Thank you. Mr. Staples, you have some reserved time. Thank you, Your Honor. I do want to address this issue of a possible carve-out and the difference with the common law bad faith and the Ridley claims. Here is my concern. The reason that we are here is that there is a district court opinion that liability of the insureds was not reasonably clear. That is the decision that we were not able to review at this level, which is what we would like to do.  Were you involved in the last case, in the case where you appealed? It was. That was the issue in that case. I guess that you moved to dismiss. Correct. And to remand on the basis of mootness. Correct. We did. You also moved to vacate at that same time. We did. Yes. Isn't that inconsistent? We didn't think so. And I still don't think so. I still think that the common law bad faith damages out of the Ridley payment would have arisen. You know, it's pretty subtle, but I'm thinking if liability isn't reasonably clear, and that's why they don't have to pay for the medical as it goes along, and that's not moot through happenstance, it's moot because you moved to dismiss your own appeal of that decision after getting the money. But I don't know that it would be res judicata on anything but the Ridley payments, but I can see where it would be collateral estoppel on bad faith, because ordinarily if liability isn't reasonably clear, the insurance company does not have to cough up its policy limits at the outset. And I can see where a judge even considering all the equities would still deny vacator. What am I missing there? Why a judge would deny? Even if he applied the American game standard and considered all the equities that he should, how do you avoid vacator in that situation? I mean, that's an important determination that liability is or is not reasonably clear, and it goes to the bad faith damages on the half mill as well as the Ridley payments. It certainly does, and American economy has made that clear. American games has three standards, three factors to look at. The first is the motives of the party in rendering the claim moot, whether this was a disgruntled litigant who sought to render the claim moot to avoid the- Motives are fine. I know there was a lot of language in the opposing brief that seemed to be trying to imply that there was something dirty about what the claimant was doing, and I just didn't see any merit to it whatsoever. Then I'll move to number two and three. Number two would be the hardships of granting or refusing vacator. Now, in this case, there are several factors. The weight falls to a yacht. There would be a significant hardship in not having this decision that reasonably- The hardship is not getting more money for a seriously injured person. Anything else? Yeah. I mean, that-well, I mean, ultimately- I mean, you've got something like, what was it, a million seven or something? Ultimately, yeah. There's a piece of plywood that went into this guy's brain cavity. It's a bad injury. A half million wouldn't cover it. No. No, it didn't. The injury is he may need a lot more than a million seven. Okay, what's the next equity? Well, failing to-the equity would be that this would preclude our ability to bring a statutory bad faith case that he has every right to bring. That's a repeat of the first one. Okay. The second would be judicial economy. No one cares about the metaphysics of this. It's about the money. Well, are you speaking to the third factor, the judicial economy? Is that metaphysics? No, the second factor. Okay. The third factor from American Games is the competing values of finality of judgment versus the right to relitigation. And this basically gets to judicial economy. Judge Malloy is going to have a decision to make. This is who we filed the statutory bad faith case action against. He has a decision on whether or not to preclude a statutory bad faith case, which accrued after the confession and judgment. He has a decision on whether to preclude that action based on this unreviewable decision by Judge Siebel that liability was not reasonably clear. He's going to have to deal with it one way or another if it's not vacated. Essentially, you're going to end up with the same set of factors in that case, right? Absolutely. There's always an exception to collateral estoppel if you don't have the chance to fully litigate, and you're going to say you don't have the chance to fully litigate it. We're going to be in the same place. And we'll probably be back here on whatever Judge Malloy does. We think that it would be most appropriate to let Judge Malloy determine whether or not liability is reasonably clear. That same question that was asked before. But can't he do that without this vacator issue having been decided? Well, he could. But I am confident that the American economy would appeal his decision to do so without deciding that we are collateral estoppel or that there's issue preclusion. Okay. I think we're coming back up. All right. Thank you, Counsel. Your time has expired. Oh, one further question. Go ahead. I have a practical question. Judge Siebel is not on the bench. That's true. Judge Malloy is. If we were to remand to just say the district judge applied the wrong standard, then somebody would have to redo this vacator question. It would be Judge Malloy. Would that be Judge Malloy? No, it would be Judge Waters, I believe. I see. Because of where it is in Montana? Yeah. Yeah. There's two different cities in Montana. Is that what's going on here? Two different divisions. Probably, Your Honor, would be Justice Morris with the Butte Division. Just a moment, Counsel. If you want to respond, please come over to the microphone so that the tape recorder can pick it up. I was hoping to get both of these cases in the same place before one judge. I believe the reality of it, because the district court case that Judge Siebel had was in the Butte Division, and my understanding now with we've had a couple of retirements in Montana, is that Justice Morris would now be the – Judge Morris would be the Article III judge with Butte Division under his jurisdiction, and it would be, if you remanded, it would go to him, possibly. Butte's on a lottery. So you can get any one of the justices. Butte Division. Thank you. All right. One further question, Counsel, before you leave. I can only speak for myself. We don't confer on the cases before we hear argument. I found the red brief kind of annoying in its disdainful tone and criticism. It was just a distraction for me that made it hard to read. I thought, on the substantive points, both sides made legitimately arguable points with legitimate arguments, and the briefs were very helpful, except for that distracting, disdainful tone. I appreciate that, Your Honor. Yes, you may. Judge, I agree with you, and I apologize to the Court. I did not write those briefs. I didn't have an opportunity to review them. That was originally handled by a partner and a former associate, and I agree with your comments in terms of the tone being more than it needed to be. All right. Thank you, Counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Kleinfeld, Berzon